Morphy, X
This case turns upon the construction of a clause in the olographic will of the late Philip Ducloslange, the plaintiff’s father, executed in 1820. The deceased, among other testamentary dispositions, made a partition in kind among his natural children, of an irregular piece of ground owned by him, being square No. 77 of the suburb Annunciation. He made out and annexed to his will a plan of the property, on which he marked along the dividing line, the front and depth of the lots, or divisions, he proposed to make. In the body of his will he declares, that the division No. 3, which he gives to Furcie, alias Philip Ducloslange, the present plaintiff, is composed of the two centre lots, measuring together, 120 feetfront by 160 in depth; while on the plan to which he refers, the length of the side lines, or depth of the lots, is marked as being only 120 feet. On the 6th of August, 1835, the plaintiff subdivided his portion of the land into four lots fronting on Polymnia street, with a depth of 120 feet. He declared, in the sale, that he had acquired this property by inheritance from the estate of Philip Ducloslange, and that it was designated in the plan annexed to his last will as division No. 3. Some time after, Edouard Ducloslange, the brother and co-heir of the plaintiff, failed, and, among other property, surrendered to his creditors a portion of division No. 1, which had been allotted to him by his father. This portion, which adjoins the rear of one of the two original lots of division No. 3, assigned by the will to the plaintiff, is described as having a front of sixty feet, by a depth of about eighty feet. At the public sale of the insolvent’s estate, it was adjudicated to the defendants, who have since been in possession. Of this piece of property the plaintiff now claims a space of forty feet by sixty, which he alleges he had reserved for his, own *191 use and benefit when he sold the front lots with a depth of 120 feet, and which he avers was unlawfully and wrongfully sold by the syndic as belonging to the property of Edouard Ducloslange. There was a judgment below in favor of the defendants, from which this appeal has been taken.
The question before us may be considered as entirely one of fact. What was the intention of the testator? Did he intend to give to the two lots assigned to the plaintiff a depth of 160 feet as written in the will, or one of 120 as written on the plan to which the will refers. -We incline to the opinion of the Judge below, that the depth intended to be given by the testator to the plaintiff’s lots, was that expressed on the plan. The probability is, that before writing out that part of his will in which he divides the square, the deceased had prepared the plan which he annexed to it, and to which he refers. All the admeasurements mentioned in the will correspond with those marked on the plan, with the exception of the depth of these two lots, in relation to which the discrepancy exists. It is well known, that according to the original division of the squares in the city and suburbs, the ordinary size of a full lot of ground was sixty feet front by a depth of 120 feet. It; is reasonable to suppose that they were lots of such dimensions which the testator had in view, when he declared that the division No. 3, which he assigned to plaintiff, was formed of the two centre lots (les deux terrains du milieu) as marked on the plan, apd that it was through mistake he gave them the unusual depth of 160 feet. This is the more probable as such a depth would leave the lot of Edouard Ducloslange, on the other side of the irregular square, with the still more unusually small depth of forty feet. This seems to have been the understanding of the plaintiff himself, and of his co-heirs. Had he thought himself entitled to a depth of 160 feet in 1835, it is difficult to believe that he would have sold his lots with only a depth of 120 feet, and would have reserved a small portion of ground without any issue, and completely enclosed by surrounding lots. The language, moreover, which he made use of, does not at all convey the idea that he was reserving any part of the ground he owned in the square, but, on the contrary, that he was selling all that he then believed that he did own. He describes *192 the property as being that which he inherited from his father, and refers to the very plan which limits his depth to 120 feet. At a subsequent period, when Edouard Ducloslange had failed and surrendered the property now held by the defendants, it was described in his schedule as having a depth of about eighty feet, which it could not possibly have if the plaintiff’s lots had really a depth of 160 feet, the whole width of the square at that place being only about 200 feet. The plaintiff, who Was a creditor of the insolvent, and was made a party to the proceedings, suffered the property to be advertised and sold to the defendants, as described in the schedule, and never made any opposition. From all these circumstances we are satisfied, that the inferior Judge has not mistaken the intention of the testator ; and that it was understood in the same way, and’so acted upon by the plaintiff himself, and his co-heirs.

Judgment affirmed.